STATE OF MARYLAND, To the Use of Winfield H. Bond et al. *vs.* CONSOLIDATED GAS, ELECTRIC LIGHT AND POWER COMPANY.

*Action for Wrongful Death—Dangerous Article—Injury to Purchaser's Child—Breach of Warranty—Privity of Contract—Negligence.*

It being essential for the maintenance of an action under Code, art. 67, for wrongful death, that the deceased might have maintained an action had he survived, there can be no recovery for a child's death as a result of a defect in an article purchased by the child's parents, the child not being in privity of contract with the vendor as regards the warranty on the sale, and so not being capable, had he survived, of suing on such warranty.

p. 395

In order that there may be a recovery on the ground of negligence, it must be alleged and proved that the defendant either acted negligently or refrained negligently from acting as regards a particular individual to whom it owed the duty to use ordinary care in so acting or refraining from acting.        p. 395

The vendor of an article manufactured by another, and not inherently dangerous, which it sold in the same condition as when it was received, without any knowledge that the article was not perfectly safe, or that the manufacturer was irresponsible or incompetent, is not liable to a person, with whom it had no contractual relation, for injuries caused by defects therein.                                        pp. 397-399

*Decided July 22nd, 1924.*

Appeal from the Superior Court of Baltimore City (FRANK, J.).

Action by the State of Maryland, to the use and for the benefit of Winfield H. Bond and Naomi E. Bond, his wife, parents of George Gunther Bond, deceased, against the Consolidated Gas, Electric Light and Power Company. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and BOND, JJ.

*Henry H. Dinneen,* with whom was *Harry M. Benzinger* on the brief, for the appellant.

*E. M. Sturtevant,* with whom was *Raymond S. Williams* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

This action is brought in pursuance of sections 1 and 2 of article 67 of the Code, generally referred to as Lord Campbell's Act, in the Superior Court of Baltimore City, the plaintiff being the State of Maryland, to the use and for the benefit of Winfield H. Bond and Naomi E. Bond, his wife, parents of George Gunther Bond, an infant, since deceased, the defendant being the Consolidated Gas, Electric Light & Power Company of Baltimore, a corporation.

The single question involved in this appeal is the correctness of the action of the lower court in sustaining a demurrer to the declaration. The effect of the demurrer is to admit, for the purposes thereof, all of the allegations of fact set out in the declaration, but to deny their legal sufficiency to sustain the action.

The declaration was filed on March 4, 1924, and on March 5, 1924, the defendant filed a demurrer to same in the following words: "The defendant, Consolidated Gas, Electric Light & Power Company of Baltimore, a corporation, by Raymond S. Williams, its attorney, demurs to the amended

declaration and each and every count thereof, and says that the said amended declaration and each and every count thereof is bad in substance and insufficient in law." Issue was then joined on the demurrer, and on March 24th, 1924, the court sustained the demurrer to the declaration without leave to amend, and judgment was entered for the defendant for costs. It is from this ruling on the demurrer, and from the judgment, that this appeal is taken.

The material averments of the first count of the declaration are that the defendant is a corporation engaged for its own profit in the manufacture, distribution and sale of illuminating, cooking and heating gas in the City of Baltimore, and also the sale of gas fixtures such as lamps, ranges, heaters and burners intended by it to be used by the purchasers thereof in the consumption of gas sold by the defendant; that the gas manufactured and sold by the defendant is piped into homes and dwellings located in Baltimore City and distributed through such premises by smaller pipes, to which said smaller pipes are attached stop-cocks, by the opening of which the gas is permitted to be discharged into the stove, burner or heater and then ignited by the application of a flame thereto, thus producing heat or illumination or both, as the occupant of the house may require; that the equitable plaintiffs were the occupants of a certain dwelling known as No. 913 Homestead Street, in the City of Baltimore, which dwelling was connected with the gas mains of the defendant and gas was supplied through smaller pipes located in the building as above described; that in the month of September, 1922, the defendant sold to the equitable plaintiffs, to be used by them in the said dwelling for the purpose of creating auxiliary heat for the comfort of themselves and their children, a certain non-luminous gas heater; that this sale was made through an agent of the defendant duly acting in the course of his employment and well knowing the purpose for which the said heater was to be used; that the said agent of the defendant represented to the equitable plaintiffs that the heater so sold could be used with perfect safety by the equitable plaintiffs by attaching a hose leading from the said

heater to the gas cock; that relying upon the representation of the defendant's agent, which representation was made for the purpose of inducing the equitable plaintiffs to purchase said heater, the equitable plaintiffs did buy the said heater and fully pay for same; that the warranty of the said defendant, made through its agent, that the heater could be used in the dwelling house with perfect safety, was untrue, and that the heater so sold was defective, in that when gas was supplied in the manner directed by the defendant's agent it produced a certain odorless, insidious, and extremely dangerous gas or vapor commonly known as carbon monoxide; that on or about the 11th day of February, 1923, while the equitable plaintiffs were using the said heater in the manner suggested by the defendant's agent and according to his direction, the same then and there generated, discharged, and diffused into the house of the equitable plaintiffs a large quantity of said poisonous gas known as carbon monoxide, of which fact the equitable plaintiffs were ignorant and had no means of learning of the existence thereof, whereby the infant son of said equitable plaintiffs, George Gunther Bond, was poisoned by inhaling the fumes of the said carbon monoxide, and as a direct and immediate consequence thereof, died; that by reason of the false representations as to the utility and safety of said gas heater, and the wrongful act and default of the defendant, an action hath accrued to the said equitable plaintffs, as parents of said infant decedent, to demand of the said defendant, for and by reason of said wrongful act and default, damages to compensate them for the loss of their said infant son, due to his death as above stated.

The second count of the declaration contains, in addition to what has been stated as being in the first count, the further allegation that the defendant, at the time of the sale of the said heater to the equitable plaintiffs, knew that the equitable plaintiffs relied on the defendant's judgment that the said heater should be reasonably fit for the purpose to which the equitable plaintiffs intended to put it, and that, as a matter of fact, the said heater was not reasonably fit for the purpose

for which the equitable plaintiffs, in reliance as aforesaid upon the judgment of the defendant, had purchased it.

Section 1 of article 67 of the Code of Public General Laws provides that

"whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony."

Article 83 of the Code, known as the Uniform Sales Act, section 33, provides:

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty."

Section 36 of the same article, sub-section 1, provides:

"Where the buyer expressly or by implication makes known to the seller the particular purpose for which the goods are required and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

The theory of the plaintiff's case, as set out in the declaration, is that there was an express or implied warranty by the defendant, in the sale from the defendant to the equitable plaintiffs, that the gas heater referred to in the declaration was safe and reasonably fit for the particular purpose for

which it was sold, that the defendant knew the purpose for which the article was to be used and that the equitable plaintiffs relied upon the judgment of the defendant in that respect; that the wrongful or negligent act of the defendant was the breach of this warranty, and that this breach, resulting in injury to the deceased infant, created a right of action, which, if death had not ensued, entitled the infant to recover damages from the defendant.

We are unable to give our assent to this proposition. The sale in this case was made by the defendant not to the deceased, but to the equitable plaintiffs. It is an essential requisite for the maintenance of an action such as this that the decedent would have been entitled to maintain an action for the injury against the defendant had he survived; or in other words, that in this case if the infant, George Gunther Bond, had been injured instead of killed as a result of the alleged wrongful act, neglect or default of the defendant, he must have been in a position to maintain an action against the defendant, as a prerequisite for the equitable plaintiffs in this case to maintain the present suit. To determine this question it is necessary, therefore, to see whether or not, under the law as settled in this State, the said infant (had he survived) would have been able to legally maintain an action in damages for the wrongful or negligent act of the defendant, alleged to be the breach of the warranty in the sale of the gas heater to the equitable plaintiffs. This question must be answered in the negative, for the reason that there is no privity of contract between the deceased infant and the defendant, and there is no allegation of such privity of contract set out in the declaration. This allegation was a necessary part of the declaration, and doubtless would have been made, had it not been for the fact that the evidence which could be adduced would not support such an allegation.

In the case of *Flaccomio* v. *Eyesink,* 129 Md. 367, in which an action was brought against a retail whiskey dealer for injuries received by the plaintiff from whiskey adulterated with wood alcohol, which whiskey was labeled and sold

to him as pure Sherwood, the evidence showed that the plaintiff had purchased the whiskey in question from the defendant, Flaccomio, who kept a saloon and who had purchased it from Sonneborn & Company, and they in turn had purchased it from the distiller or manufacturer. This Court, speaking through Judge Thomas, quoted with approval the case of *Roberts* v. *Anheuser-Busch Brewing Association*, 211 Mass. 449, in which it was said: "While there may be no inherent difficulty in maintaining an action of tort upon a false warranty, it yet remains true that there cannot be a warranty where there is no privity of contract. It cannot be found that there was a particular contract when there was no contract whatever. If there had been no contractual relation between the plaintiff and defendant, the action cannot be maintained upon the ground that there was any warranty by the defendant of the good quality of its mixture." See also *Gearing* v. *Berkson*, 223 Mass. 257.

The negligence or wrong complained of in this case is a breach of warranty of sale, not made with the injured party, and therefore there was no privity between the defendant and the deceased. There is no allegation of any breach of duty owed by the defendant to the deceased nor the allegation of the existence of any such duty, and consequently no liability on the part of the defendant. Actionable negligence is negligence to the particular person who has been damaged, and before a recovery can be had it must be alleged and proven that the defendant either acted negligently or refrained negligently from acting, to a particular individual to whom it owed the duty to use ordinary care in so acting or refraining from acting. The declaration in this case must allege such facts as show the existence of a duty which the defendant owed to the deceased, and such facts as show that the defendant wrongfully failed or neglected to perform such duty. This it does not do. We find no allegation of any duty owed by the defendant to 'the deceased infant, and no allegation of any breach of such duty.

In *State, use of Hartlove,* v. *Fox,* 79 Md. 514, it is said: "The declaration must not leave to conjecture or implication

anything that is material. * * * The declaration should have presented such a case as showed that the defendant owed a duty to the deceased not to fraudulently expose him to a disease which would probably result in his injury by coming in contact with it."

The declaration here does not allege that the defendant was the manufacturer of the gas heater which is alleged to have caused the death of the infant, and the authorities, in this State and elsewhere, which hold that a manufacturer is liable for injury to strangers resulting from the sale of articles inherently dangerous, do not apply to cases like the one under consideration. The reason for the rule holding the manufacturer responsible for the sale of an inherently dangerous article is that he is cognizant of the purposes for which it is intended, has complete control of its manufacture, and is liable in damages to all persons using such articles, when injured by reason of defective manufacture or compounding. In the case of *Flaccomio* v. *Eyesink, supra,* there was no evidence that the defendants, Sonneborn and Flaccomio, neither of whom were manufacturers or blenders of spirits, knew of the poison, and its presence could only be detected by chemical analysis. This Court said: "And there may be cases where the presence of a dangerous ingredient in the article sold may in itself justify an inference of negligence on the part of the defendant. But such an inference is not warranted where a merchant deals in an article not generally regarded or known to be dangerous and simply sells it in the condition in which he buys it, without any reason to suspect or any means of detecting the presence of the dangerous quality."

In the later case of *Goldman & Freiman Bottling Co.* v. *Sindell,* 140 Md. 488, which was a suit against the manufacturer of a beverage called "Whistle," this Court held that the defendant was liable to a second vendee for injury caused by the presence of glass in the beverage, and applied in that case the maxim *res ipso loquitur.* It was pointed out that the facts in that case clearly distinguished it from *Flaccomio* v. *Eyesink.*

As above stated, the defendant here was not the manufacturer; it was the vendor of an article not in itself inherently dangerous, which it sold in the same condition as received from its vendor, and there is no allegation of any knowledge on its part that same was not perfectly safe, nor any allegation that the article was purchased from an irresponsible or incompetent manufacturer. In the case of *Pitman* v. *Lynn Gas & Electric Company*, 241 Mass. 322, the facts were very similar to those alleged in the declaration in this case. In that case the defendant had bought a gas flat-iron for the purpose of resale, from a reputable manufacturer. The flat-iron proved to be defective, but this fact was unknown to the gas company, which sold it to a purchaser, and which purchaser gave the plaintiff in that case permission to use it. Owing to the defect the plaintiff was injured and endeavored to recover by an action against the gas company. The court in that case, in an opinion denying liability on the part of the defendant, said: "The plaintiff relies on *MacPherson* y. *Buick Motor Company*, 217 N. Y. 382. Without suggesting that the majority opinion would be followed in this commonwealth, it is to be observed that the defendant in that case was the manufacturer of the automobile and not a mere dealer. As there is nothing in the evidence to show that the defendant was in any way responsible to the plaintiff, with whom it had no contractual relation, judgment must be entered for the defendant." The New York case referred to in the above quotation was one in which the opinion was written by Judge Cardozo, in which it was held that the Buick Motor Company was responsible for injuries resulting from a defective wheel on an automobile. In that case the learned judge said: "If the nature of the thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequence to be expected." And then added: "There must be knowledge of the danger, not merely possible but probable. It is possible to use almost anything in a way that will make it dangerous if defective. That is not enough to charge a manufacturer with a duty indepen-

dent of his contract." It will be noted in the case last cited, and in the case of *Goldman & Freiman Bottling Co.* v. *Sindell,* 140 Md. 488, that the defendants were manufacturers of articles in themselves inherently dangerous when defectively made, and which became a menace to the health and lives of any person who might use them. In this case the heater was sold to the equitable plaintiffs by one not the manufacturer and it is not alleged that the article in itself was inherently dangerous.

In 24 *R. C. L.,* page 514, it is said: "The liability of one who sells an article imminently dangerous, to a person not in privity of contract with him, is founded in tort and not in contract. And * * * a warranty by the seller of the quality or condition of the subject matter of sale does not inure to the benefit of third persons."

And in same volume, page 158, it is stated: "The fact that the seller warrants the condition or quality of the thing sold does not in itself according to the better view impose any liability on him to third persons who are in no way a party to the contract. In such a case there is no privity of contract between the seller and such third person, and this precludes any right on his part to any advantage or benefit to be derived from the warranty."

This we think is a correct statement of the general rule, the exceptions being cases where the defendants are manufacturers or compounders of articles or substances which in themselves are imminently and inherently dangerous. Finding no error in the ruling of the lower court, the judgment will be affirmed.

*Judgment affirmed, with costs to appellee.*