823 F.2d 60
 ARABIAN TRADING & CHEMICAL INDUSTRIES CO. LTD., a private
limited liability company of the Kingdom of Saudi Arabia;
Metito (Saudi Arabia) Ltd., a private limited liability
company of the Kingdom of Saudi Arabia; Metito Overseas
Ltd., a private limited liability company of the United
Kingdom; Metito International, Inc., a body corporate of
the State of Texas; Saudi Marketing, Trading and Technical
Enterprises Co., a private limited liability company of the
Kingdom of Saudi Arabia, Plaintiff-Appellee,
v.
The B.F. GOODRICH COMPANY, a body corporate of the State of
New York, Defendant-Appellant.
 No. 86-3583.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 9, 1987.
Decided July 15, 1987.
 
 James E. Carbin (Deborah G. Shortridge, Judith C. Levinson, Weinberg & Green, Baltimore, Md., on brief), for defendant-appellant.
 Robert Gene Levy (Allan P. Hillman, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., on brief), for plaintiff-appellee.
 Before PHILLIPS and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 In this action by former employers of Stuart Morris and Gerhardt Scott, the district court, applying Saudi Arabian law, entered a permanent injunction barring the B.F. Goodrich Co. (BFG) from employing Morris or Scott in Saudi Arabia. Because we conclude that Saudi Arabian law does not provide a private cause of action in favor of an offended employer or contemplate injunctive relief in the factual circumstances here in issue, we reverse.
 
 
 2
 * Appellees are three Saudi Arabian corporations, a British corporation, and a United States (Texas) corporation, jointly known as the "Metito" companies. Appellant B.F. Goodrich is a New York corporation.
 
 
 3
 In 1983 Metito of Saudi Arabia hired British citizens Morris and Scott to develop and market in Saudi Arabia its water treatment chemicals, especially those used to desalinate water by reverse osmosis. Morris served as business manager, and Scott directed technical operations. Morris and Scott worked for Metito, or one of its successor corporations, Arabian Trading and Chemical Industries Co. (ATCI) or National Company for Trading and Chemical Industries (NTCI), until they resigned in late 1985.
 
 
 4
 Shortly before his resignation, Morris learned that BFG was interested in entering the market for desalination chemicals. Discussions between BFG and Morris led to a contract under which BFG agreed to retain Mex, a company formed by Morris and Scott, to provide sales, marketing, and technical services to help BFG develop a market in Saudi Arabia for its desalination chemicals.
 
 
 5
 Invoking diversity jurisdiction, the Metito companies then brought this action in the United States District Court for the District of Maryland. They sought a declaratory judgment that under Saudi Arabian law BFG was not entitled to transact business with Morris and Scott or to use any Metito marketing or proprietary information possessed by Morris and Scott and an injunction prohibiting BFG from interfering with Morris or Scott's "contractual, fiduciary or statutory obligations" to Metito as provided by Saudi law.
 
 
 6
 On motion of the Metito companies, the district court granted summary judgment awarding the relief sought, on the ground that BFG's employment of Morris and Scott did, as alleged, violate Saudi Arabian law. The injunction, as once amended, provided:
 
 AMENDED INJUNCTION ORDER
 
 7
 The Court having granted Plaintiffs' Motion for Summary Judgment, it is hereby ORDERED that Defendant The BFGoodrich Company ("BFGoodrich") is ENJOINED as follows:1. BFGoodrich is enjoined for three years from August 18, 1985 from employing or otherwise engaging Stuart Clifford Morris ("Morris") to act on its behalf in Saudi Arabia and is enjoined for three years from November 7, 1985, from employing or otherwise engaging Gerhardt Ralph Scott ("Scott") to act on its behalf in Saudi Arabia, whether as employees, independent contractors, or through any company or partnership.
 
 
 8
 2. BFGoodrich is enjoined from the use, for any purpose, of Plaintiffs' marketing and other proprietary information which has been furnished to BFGoodrich by Morris or Scott, and BFGoodrich shall return to Plaintiffs all documents containing Plaintiffs' marketing and other proprietary information furnished to BFGoodrich by Morris or Scott.
 
 
 9
 3. BFGoodrich, its officers, agents and employees, are permanently enjoined from interfering with Morris' or Scott's contractual, fiduciary, or statutory obligations to Plaintiffs as determined by this Court's Memorandum and Order entered May 14, 1986.
 
 
 10
 This appeal followed.
 
 II
 
 11
 In this diversity action, the district court was obligated to apply the substantive law, including the conflict of law rules, of Maryland. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Maryland follows the rule of lex loci. Uppgren v. Executive Aviation Services, 326 F.Supp. 709 (D.Md.1971). Because the injury alleged here occurred in Saudi Arabia, the substantive law of that country governs this controversy.
 
 
 12
 The district court, applying Saudi Arabian law, looked primarily to two provisions, Sec. 6 and Sec. 8 of the Saudi Transfer Rules, as dispositive of the claim. They provide as follows:
 
 
 13
 6. When the laborer, whose term of contract has expired, is a professional having access to the secret of the profession of the employer then he shall be allowed to enter into contract with another employer or given permission to start a business of his own, only after three years from the date of terminating the original relationship, unless the employer approves his employment. Examples of this are a doctor who works with a private dispensary or clinic, the accountant or the advisor who work with an employer in the field of his profession.
 
 
 14
 * * *
 
 
 15
 8. Any infringment of the abovementioned rules is punishable by a financial fine not exceeding ten thousand riyals but not less than two thousand riyals. The number of fines shall correspond with the number of labourers pertaining to the infringment. The application of this punishment shall be under the responsibility of the labour commissions provided for in the eleventh chapter of the "Labour and Workmen Regulations". The labourer or employee shall be expelled from the country and the provisions of article 4 applied therein.[1]
 
 
 16
 The Metito companies claimed and the district court agreed that these two provisions gave them the right to seek a private remedy against BFG for BFG's alleged violation of the Saudi Labor Transfer Rules. This position was supported by the affidavits of a well-qualified and experienced member of the Saudi Arabian bar, Salah Al-Hejailan, who opined that the "Saudi Labor Transfer Rules are remedial and create a private right which may be exercised by an aggrieved party through the procedure provided by law, against both the employees and their new employer." This position was, however, directly opposed by the affidavits of Hassan Mahassni, an equally well-qualified Saudi Arabian attorney.
 
 
 17
 Upon a consideration of the opposing affidavits of these experts in Saudi law and the Rules themselves, we conclude that these provisions of Saudi law create no private right of action by which an aggrieved employer may seek civil declaratory or injunctive relief directly against an offending employer. In our view, both the substantive rights and remedies provided by these provisions are fundamentally different in kind from private rights and remedies enforceable by civil action.
 
 
 18
 Under Secs. 6 and 8 of the Rules and pursuant to established practice, as revealed by undisputed elements of the legal experts' affidavits, these provisions are only invoked by the aggrieved employer's filing of a complaint against the offending employees and the new employer with the Labor Office. If a preliminary investigation thereupon reveals that the complaint may have merit, a representative of the Ministry of Labor and Social Affairs prosecutes the offending employees and employer at a hearing before the Supreme Labor Commission. The Commission, if it finds that a violation has occurred, may impose the fines described in Sec. 8 and/or order the deportation of the employees.
 
 
 19
 This procedure, although obviously established to protect employers who recruit and train foreign employees, most closely resembles a criminal prosecution.[2] Although the aggrieved employer brings the offense to the attention of the authorities, it is the government that petitions the adjudicating tribunal for redress. Nothing in the process is designed directly to compensate or provide restitution to an aggrieved employer for any injury it might have suffered. Protection against future injury, "prospective relief," is concededly provided, but it is achieved only indirectly through the expedient of deporting the offending employees, not by any process against the offending employer.
 
 
 20
 As the Al-Hejailan affidavits concede, it is only through this procedure that any "right" created by Saudi law may be exercised under Saudi law. The "right" created is simply the opportunity to invoke the process by which the government imposes sanctions on those who violate Sec. 6, nothing more. There is no right under these provisions of Saudi Arabian law to seek a private remedy through a private cause of action for the injury alleged by the Metito companies.[3]
 
 III
 
 21
 Even if Saudi law did provide a private cause of action, we think the district court lacked the authority under Maryland conflicts law to award the specific declarative and injunctive relief sought. Under Maryland law, when a right is defined by the statutes of another jurisdiction, the remedial limitations imposed by the foreign jurisdiction are treated as binding on Maryland courts. See Uppgren, 326 F.Supp. at 713; cf. Tennessee Coal, Iron & Railroad Co. v. George, 233 U.S. 354, 359, 34 S.Ct. 587, 588, 58 L.Ed. 997 (1914) ("There are many cases where right and remedy are so united that the right cannot be enforced except in the manner and before the tribunal designated by the act."). If a Maryland court were therefore to find a private cause of action under Saudi law for violations of Sec. 6, it would consider itself nevertheless limited in its remedial powers to those remedies provided by Saudi law that lay within the general remedial powers of a Maryland court of general jurisdiction.
 
 
 22
 Section 8 provides only clearly defined remedies for violations of Sec. 6, fines and deportation. The fines collected go not to the offended employer but to the Saudi government-sponsored Workers Social Insurance Fund. Saudi Labor Transfer Rules Sec. 9. Clearly the district court sitting as a Maryland court of general jurisdiction had no power to order BFG to pay a fine to the Saudi government or to order the expulsion of Morris and Scott from Saudi Arabia. And under Maryland law the district court also lacked authority to fashion relief not contemplated under Saudi law.
 
 
 23
 Nothing in Sec. 8 authorizes the award of injunctive relief in favor of an ex-employer. Admitting that Sec. 8 does not on its face authorize injunctive relief, the Metito companies argue that Article 185 of the Saudi Arabian Labor and Workmen Law allows the granting of injunctive relief. Article 185 provides:
 
 
 24
 None of the commissions provided for in this chapter [the Labor and Settlement of Disputes Commissions] may abstain from rendering a decision on the pretext that there are no applicable provisions in this Law. In such a case, the commissions shall be guided by the principles of Islamic Shari'ah, local rules, established judicial precedents, principles of justice, usage and the rules of equity.
 
 
 25
 Article 185 clearly empowers the Labor and Settlement of Disputes Commissions, which would hear this cause if it were brought in Saudi Arabia, to settle all disputes brought before them whether or not a specific provision of law resolves the dispute. It, however, does not permit the Commissions to fashion extraordinary relief when the dispute before it is governed by an existing provision of law. Article 185, therefore, does not authorize the granting of injunctive relief for violations of Sec. 6.
 
 
 26
 As no provision of Saudi law authorizes the issuance of an injunction to enforce Sec. 6 and because American courts lack the authority to grant the relief provided under Saudi law, any action to enforce a private cause of action under Sec. 6 would have to be dismissed. See Slater v. Mexican National Railroad, 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900 (1904).
 
 
 27
 Because we find that no private cause of action is created by the provisions of Saudi Arabian law relied on by the Metito companies, we find it unnecessary to reach the assignments of procedural error raised by BFG. The injunction order of the district court is vacated and the action dismissed.
 
 
 28
 VACATED AND DISMISSED.
 
 
 
 [1]
 Although Sec. 6 does not on its face appear to apply to employers such as BFG, the parties do not dispute that under appropriate circumstances an employer who employs persons who are not eligible for employment under Sec. 6 would be subject to the penalty prescribed in Sec. 8
 
 
 [2]
 Although we note the similarity between the procedure used to enforce Secs. 6 and 8 and a criminal prosecution, we do not determine as a matter of law whether Secs. 6 and 8 are remedial or penal. Restatement (Second) of Conflict of Laws Sec. 89 (1971) ("No action will be maintained on a foreign penal cause of action.")
 
 
 [3]
 Although it placed primary reliance on Secs. 6 and 8 of the Saudi Labor Transfer Rules, the district court also cited Sec. 96(f) of the Saudi Labor Regulations in support of its view that Saudi law provides a private right of action. Section 96(f) provides:
 Article 96. In addition to the obligations provided for in this Law and in the rules and decisions issued for its implementation, a workman shall: .... (f) Keep the technical, commercial and industrial secrets of the products which the workman produces or in the production of which he directly or indirectly participates and, in general, keep all the trade secrets relating to the work, which, if divulged, are apt to prejudice the interests of the employer.
 The court noted with apparent agreement the assertion in the Al-Hejailan affidavit that Morris and Scott had violated Sec. 96(f) by conveying confidential Metito information to BFG.
 Although the Metito companies assert that their civil right of action for injunctive relief is not at all dependent on Sec. 96(f), we note that such a violation, even if clearly established on the record, could not give rise to a private cause of action against a new employer for the employee's violation.