## The Baltimore and Potomac Railroad Company vs. State of Maryland, use of Joseph Abbott.

*Master and Servant—Death by Negligence—Railway employé —Section 1 of Article 67 of the Code—Right of Action— Assumption of Risk.*

Where a brakeman on a freight train of a railroad company, was killed while so employed, by the smoke and gas in a tunnel which was insufficiently ventilated, and the proof showed that the deceased accepted and continued in the employment of the railroad company with full knowledge of the condition of the tunnel and of the risk of the work therein, he could not, if death had not ensued, have recovered for any injury sustained by reason of the condition of the tunnel, and consequently, under section 1 of Article 67 of the Code, his father would not be entitled to recover for his death.

If a person chooses to accept employment, or continue in it, with knowledge of the danger attending it, he must abide the consequences so far as any claim against the employer is concerned.

Speculation as to how or from what cause the accident occurred cannot be allowed to stand for proof, or be made the basis of a verdict in favor of the party upon whom the burden of proof lies. There must be evidence upon which the jury can reasonably and properly conclude that the death was produced by some negligence or wrongful act of the defendant.

Appeal from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*—At the trial of this case in the lower Court the plaintiff offered five prayers, which need not be inserted. The defendant offered the following prayers:

1. That there is no legally sufficient evidence that the accident that resulted in the death of Harvey F.

Baltimore and Potomac Railroad Co. *vs.* State, use of Abbott.

Abbott was caused by any negligence on the part of the defendant, and therefore the plaintiff is not entitled to recover in this action.

2. That there is no legally sufficient evidence in this case, that the tunnel of defendant was not so constructed and maintained as to be reasonably safe for those of defendant's employés whose duty required them to pass through the same.

3. That there is no legally sufficient evidence that the accident, which resulted in the death of Harvey F. Abbott was caused by any defect in the construction or ventilation of the defendant's tunnel. And therefore under the pleadings and evidence in this case the plaintiff is not entitled to recover in this action, and the verdict must be for the defendant.

4. That if the jury shall find from the evidence that Harvey F. Abbott entered the employ of defendant as a freight brakeman on or about the 11th day of June, 1890, and continued therein in that capacity till his death on August 25, 1890, and during all that time was passing through the tunnel mentioned, generally twice a day and often more frequently, and that it required only a few days to become acquainted with the tunnel and the conditions of work therein, and that, after such opportunity of knowing the same, he continued in such employment as aforesaid, then he took the risk of such employment, and the plaintiff cannot recover in this action, even though the jury shall further find that the accident by which he lost his life was caused by the defective construction of the tunnel, or lack of ventilation of the same.

5. If the verdict of the jury be for the plaintiff, it must be limited to such a sum as, in their opinion, will be a compensation for the pecuniary loss suffered by the equitable plaintiff by reason of the death of his son, or which he may suffer thereby.

The Court (DUFFY, J.) granted the first, second, and fourth prayers of the plaintiff, and rejected its third and fifth, as also the first, second, third and fourth prayers of the defendant. It granted the defendant's fifth prayer. The defendant excepted, and the verdict and judgment being for the plaintiff, this appeal was taken.

The cause was argued before ALVEY, C. J., MILLER, IRVING, FOWLER, and MCSHERRY, J.

*Charles H. Carter*, and *John J. Donaldson*, (with whom was *Bernard Carter* on the brief,) for the appellant.

The following authorities were referred to: *Frech vs. Phila., Wilmington & Balto. R. R. Co.*, 39 *Md.*, 574; *State, use of Foy, et al. vs. Phila., Wilm. & Balto. R. R. Co.*, 47 *Md.*, 82; *Northern Central Railway Co. vs. State, use of Burns*, 54 *Md.*, 113; *State, use of Miller vs. Balto. & Ohio R. R. Co.*, 58 *Md.*, 224; *Balto. & Ohio R. R. Co. vs. State, use of Allison*, 62 *Md.*, 489; *Phil., Wilm. & Balto. R. R. Co., et al. vs. State, use of Gunther*, 66 *Md.*, 501; *Balto. & Ohio R. R. Co. vs. Stricker*, 51 *Md.*, 47; *Woodley vs. Metropolitan District Railway Co.*, 2 *Exch. Div.*, 384; *Church vs. Appleby Brothers*, 58 *L. J.* (*Q. B.*,) 104; *same case*, 60 *L. T.* (*N. S.*,) 542.

*Thomas Mackenzie*, and *John V. L. Findlay*, for the appellee.

The following authorities were cited: *City of Scranton vs. Dean*, 2 *Weekly Notes, &c.*, 467; *Allen vs. Willard*, 7 *P. F. Smith*, 374; *Baltimore and Ohio R. R. Co. vs. State, use of Hauer, et al.*, 60 *Md.*, 449; *Farwell vs. Boston & W. R. R. Co.*, 4 *Met.*, 36; *O'Connell vs. Balto. & Ohio R. R. Co.*, 20 *Md.*, 212; *Cumberland Coal and Iron Co. vs. Scally*, 27 *Md.*, 589; *Wonder vs. Balto. & Ohio R. R. Co.*, 32 *Md.*, 411; *Chicago & N. W. R. R. Co. vs. Sweet*, 45 *Ill.*, 197; *The Mad River & Lake Erie R. R. Co. vs.*

Baltimore and Potomac Railroad Co. *vs.* State, use of Abbott.

*Barber,* 5 *Ohio St.,* 541; 5 *Wait's Ac. & Def.,* 328, 329; *Ford vs. Fitchburg R. R. Co.,* 110 *Mass.,* 240; *Cumberland & Penn. R. R. Co. vs. State, use of Moran,* 44 *Md.,* 293; *Kane vs. Northern Central Railway Co.,* 128 *U. S.,* 91-96; *St. Louis Iron M. & Southern R. R. Co. vs. Higgins,* 53 *Ark.,* 458; *Fredenburg vs. N. C. R. W. Co.,* 114 *N. Y.,* 582; *Scanlon vs. Boston & Albany Railroad,* 147 *Mass.,* 484; *The Louisville, New Albany and Chicago Railway Co. vs. Wright,* 115 *Ind.,* 394; *Wuotilla vs. Duluth Lumber Co.,* 37 *Minn.,* 153; *Patterson vs. Pittsburg & Connellsville R. R. Co.,* 76 *Pa. St.,* 389; *Little Rock, &c. Railway Co. vs. Embark,* 48 *Ark.,* 460; *Louisville & Nashville R. R. Co. vs. Hall,* 4 *L. R. A.,* 710; *R. & D. R. R. Co. vs. Norment,* 84 *Va.,* 167; *Mobile & B. R. R. Co. vs. Holborn,* 84 *Ala.,* 133; *Wood on Master and Servant,* 336, 705, 707; *Wood on Railway Law,* 14–67; *Beach on Contrib. Neg.,* 135; *Anderson vs. Minn. & N. W. R. R. Co.,* 39 *Minn.,* 523; *Hannibal & St. Jos. R. R. Co. vs. Kanaley,* 39 *Kan.,* 1; *Mo. Pacific Railway Co. vs. Crenshaw,* 71 *Tex.,* 340; *N. Y. & C. M. S. & Co. vs. Rogers,* 11 *Colo.,* 6; *Clarain vs. W. U. Tel. Co.,* 40 *La. Ann.,* 178; *Ayers vs. R. & D. R. R. Co.,* 84 *Va.,* 679; *Clark vs. Holmes,* 7 *Hurl. & Nor.,* 943; *Railway Company vs. Henderson,* 37 *Ohio St.,* 549; *Sherman and Redfield on Negligence, sec.* 208; *Pidcock vs. Union Pacific R. R. Co.,* 1 *Law R. A.,* 131; *Balto. & Ohio R. R. Co. vs. State, use of Mahone,* 63 *Md.,* 135; *Dalton vs. S. E. R. W. Co.,* 93 *E. C. L.,* 296; *Crate vs. Dacora,* (*Sup. Ct.,*) 15 *N. Y.,* 607; *Franklin vs. South Eastern Railway Co.,* 3 *Hurl. & Norm.,* 211.

ALVEY, C. J., delivered the opinion of the Court.

This action was brought in the name of the State for the use of the father of Harvey F. Abbott, who was killed in the railroad tunnel of the defendant corporation, under the City of Baltimore, on the 25th day of August, 1890, to recover for alleged negligence of the

defendant as the cause of the death of the son. The deceased was in the employ of the defendant company, as brakeman on a freight train, and was killed while so employed on such train in passing through the tunnel. And the main question, under the statute (Code, Art. 67, sec. 1,) is, whether the death of the deceased was caused by any such wrongful act, neglect or default of the defendant, as would, if death had not ensued, have entitled the party injured to maintain the action for such injury. And upon the evidence produced, the preliminary question was raised, whether the evidence was legally sufficient to be submitted to the jury for their consideration. The trial in the Court below resulted in a verdict and judgment for the plaintiff, and the defendant has appealed.

There is no real dispute or conflict in regard to the facts. The young man who came to his death by the accident was about twenty-two years of age, and had been in the employ of the company some two or three months immediately preceding the time of his death. He had been in railroad employment prior to the time of his entering the service of the defendant; and, during the whole time of service with the defendant, his duty required him to go through the tunnel, on trains, two or three times a day. He was therefore fully acquainted with the tunnel, and with its physical conditions. According to the evidence, the tunnel is near about one mile and a half long, divided into three sections by open cuts; and it was in that section that runs from Pennsylvania avenue to Gilmor street, that the mangled body of the deceased was found shortly after the accident happened. No one saw or could tell how the accident occurred. It is not pretended that there was any defect in the tracks of the road, or in the machinery of the train, or anything unusual or extraordinary in the make up of the train, upon which the deceased was acting as brakeman;

JANUARY TERM, 1892.          157

Baltimore and Potomac Railroad Co. *vs.* State, use of Abbott.

or that there was any negligence or want of ordinary care in conducting the train through the tunnel. But the contention is that the tunnel is not sufficiently ventilated; that it is not sufficiently supplied with vents or flues to relieve it of the immense quantity of smoke and gas generated by and emitted from the engines while passing through the tunnel; and that the condition of the tunnel was the immediate or primary cause of the accident to the deceased.

This tunnel, according to the evidence, has been in use, as part of the road-way of the defendant, for nearly twenty years past; and for the last ten or fifteen years, there have passed through the tunnel, on an average, from one hundred to one hundred and twenty-five trains, passenger and freight, daily; and the ordinary time for passing through is from six to nine minutes. And while accidents have happened in the tunnel, the evidence does not show that there has ever been an instance of suffocation, or of death produced by anything like asphyxiation, caused by the smoke and gas of the tunnel; though the smoke and gas at times are shown to be very distressing and oppressive to the railroad employés exposed to it. What is or would be a proper ventilation for the tunnel is a question of scientific engineering, and depends upon a great many conditions. It depends upon the length, curvatures and grades of the tunnel; its height and width, the number of trains passing through daily, and the time of intermission between trains; the character of the fuel consumed, and largely upon the state of the atmosphere, and the direction and strength of the wind currents through the tunnel. There was no testimony offered, of a scientific character, to show in what respect, and to what extent, the ventilation of the tunnel could be improved, by any reasonable supply of means in addition to those actually supplied. And whether the provision actually made for the

ventilation of the tunnel, and to relieve it of smoke and gas, is so inadequate as to render it unsafe to the life of one, in ordinary health, in passing through it as brakeman on a freight train, as the deceased was doing at the time of his death, is at best but matter of speculation and conjecture. No rational mind could so conclude with any degree of certainty, from the evidence in the record.

The day upon which the accident occurred, according to the uncontradicted proof, the weather was clear and fine, and at the time deceased entered the tunnel, the smoke and gas were not so dense as in less favorable weather. The train entered the tunnel at about half past 11 o'clock A. M., and the deceased was last seen alive in an erect position in one of the open or box cars, with a lantern in his hand. Shortly thereafter a noise was heard as of the breaking of glass, and immediately thereafter the car that the witness was on gave two or three jolts; but it was not until the train reached an open space that it was discovered that the deceased had fallen off. Immediate notice was given and search was made, and the mangled body was found, and also the broken lantern, near the place in the tunnel where the jolts in the car were observed. But how, or from what cause, the deceased fell from the train, is wholly unknown. Whether he was overcome by the smoke and gas of the tunnel and fell, or whether he made a mis-step, or lost his hand or foot-hold, in attempting to get from one car to another, are questions of mere speculation and conjecture. And on such state of case, clearly, there was no evidence legally sufficient to be submitted to the jury. A wild speculation as to how or from what cause the accident occurred cannot be allowed to stand for proof, or be made the basis of a verdict in favor of the party upon whom the burden of proof lies. There must be evidence upon which the jury could reasonably and

properly conclude that the death was produced by some
negligence or wrongful act of the defendant. The case
should have been withdrawn from the jury. It falls imme-
diately within the principle of the cases of *North. Cent.
Railway Co. vs. State, use of Burns*, 54 *Md.*, 113, and *State,
use of Miller vs. Balto. and Ohio R. R. Co.*, 58 *Md.*, 221.

But if it be assumed, according to the contention of
the plaintiff, that the tunnel was not sufficiently venti-
lated, and that it was by reason of the density of the
smoke and gas in the tunnel that the accident occurred,
still, there is no ground shown for the right to recover.
The uncontroverted proof makes it clear beyond ques-
tion that the deceased was entirely familiar with the
condition of the tunnel, and the discomforts and risks
of working therein, whatever they were, as he had been
in the daily habit, two or three times a day, for two or
three months, of going through the tunnel as brakeman
on trains. Having accepted and continued in the em-
ployment with full knowledge of the condition of the
tunnel and of the risks of the work therein, he could
not, if death had not ensued, have recovered for any
injury sustained by reason of the condition of the tun-
nel; and if he could not have recovered for such injury,
if living, those authorized to sue in conseqence of his
death, cannot, by the terms of the statute, have any
better or greater right to recover. The principle is well
settled that if a person chooses to accept employment, or
continue in it, with knowledge of the danger attending it,
he must abide the consequences, so far as any claim
against the employer is concerned. Upon any other
principle it would be impossible to carry on any of the
many dangerous trades, and trade operations, that make
up the business of the country. The cases that hold and
maintain this doctrine are numerous; and among them
is the decision of this Court in the case of *Balto. & Ohio
R. R. Co. vs. Stricker*, 51 *Md.*, 47, wherein it was

held, that the plaintiff must be held to have understood the ordinary hazards attending his employment, and, therefore, to have voluntarily taken upon himself the hazards, when he entered, or when, with that knowledge, he chose to continue in the service of the employer; and consequently he could not recover. In that case, the case of *Woodley vs. Metro. District Railway Co.*, 2 *Ex. Div. on Appeal*, 384, was referred to, and the principle of the decision of the majority of the Court of Appeal fully adopted. In the case of Woodley, the plaintiff, a workman in the employ of a contractor engaged by the defendants, had to work in a dark railroad tunnel rendered dangerous by the passing of trains. After he had been working a fortnight he was injured by a passing train. The jury found that the defendants in not adopting any precautions for the protection of the plaintiff had been guilty of negligence. But the Court of Appeal, reversing the decision of the Court of Exchequer, held, that the plaintiff having continued in his employment with full knowledge, could not hold the defendants liable for any injury arising from danger to which he voluntarily exposed himself. In that case the leading opinion of the Court was prepared by and read for Chief Justice COCKBURN; and his reasoning is so pertinent, and the principle, and the qualifications thereof, are so clearly stated by him, that we cannot do better than quote a passage from that opinion. He said:

"A man who enters on a necessarily dangerous employment with his eyes open takes it with its accompanying risks. On the other hand, if the danger is concealed from him and an accident happens before he becomes aware of it, or if he is led to expect, or may reasonably expect, that proper precautions will be adopted by the employer to prevent or lessen the danger, and from the want of such precautions an accident happens to him before he has become aware of their absence, he may hold

the employer liable. If he becomes aware of the danger which has been concealed from him, and which he had not the means of becoming acquainted with before he entered on the employment, or of the want of the necessary means to prevent mischief, his proper course is to quit the employment. If he continues in it, he is in the same position as though he had accepted it with full knowledge of its danger in the first instance, and must be taken to waive his right to call upon the employer to do what is necessary for his protection, or in the alternative to quit the service. If he continues to take the benefit of the employment, he must take it subject to its disadvantages. He cannot put on the employer terms to which he has now full notice that the employer never intended to bind himself. It is competent to an employer, at least so far as civil consequences are concerned, to invite persons to work for him under circumstances of danger caused or aggravated by want of due precautions on the part of the employer. If a man chooses to accept the employment, or to continue in it with a knowledge of the danger, he must abide the consequences, so far as any claim to compensation against the employer is concerned. Morally speaking, those who employ men on dangerous work without doing all in their power to obviate the danger are highly reprehensible, as I certainly think the company were in the present instance. The workman who depends on his employment for the bread of himself and his family is thus tempted to incur risks to which, as a matter of humanity, he ought not to be exposed. But looking at the matter in a legal point of view, if a man, for the sake of the employment, takes it or continues in it with a knowledge of its risks, he must trust to himself to keep clear of injury."

There were two Judges dissenting in that case, but not from the general principle applied by the majority, but upon the question whether the plaintiff was such

employé of the defendant as would relieve the latter of responsibility. The dissenting Judges concluded, upon the facts of the case, that the plaintiff was not an employé of the defendant, but of an independent contractor, and therefore entitled to the verdict of the jury; but they all conceded that, if the plaintiff was to be treated as an employé of the defendant, he had no right to recover.

It follows from what we have said that there was error in the Court below in rejecting the first, second, third, and fourth prayers offered by the defendant, and in refusing to take the case from the jury. We shall therefore reverse the judgment appealed from, without the award of a new trial.

*Judgment reversed.*

(Decided 14th January, 1892.)