77 A.3d 1049

**Susan MUMMERT, et al.**

v.

**Massoud B. ALIZADEH, et al.**

**No. 5, Sept. Term, 2013.**

Court of Appeals of Maryland.

Oct. 18, 2013.

Paul D. Bekman and Emily C. Malarkey (Salsbury, Clements, Bekman, Marder & Adkins, L.L.C., Baltimore, MD), on brief, for appellants.

Matthew Fogelson (Varner & Goundry, Frederick, MD), on brief, for appellees.

Submitted before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, McDONALD, WATTS, ALAN M. WILNER (Retired, Specially Assigned), JJ.

HARRELL, J.

The Circuit Court for Washington County granted a motion to dismiss this wrongful death action, brought by the family of the decedent, Margaret Varner, on the grounds that Mrs. Varner could not have brought timely a claim for medical negligence at the time of her death. When it granted the motion, the Circuit Court lacked clear guidance from this Court on the meaning of key language in Maryland's wrongful death statute, including the requirement that a "wrongful act" be one "which would have entitled the party injured to maintain an action and recover damages if death had not ensued."[1] Today, we provide that guidance regarding the meaning of this language. We hold that the Legislature did not intend to define "wrongful act" so as to render a wrongful death claim contingent on the decedent's ability to file timely a tort claim prior to death. In response to an additional argument raised here, we hold that the statute of limitations for bringing tort claims against health care providers in instances of alleged medical negligence does not apply to a claim for wrongful death. Accordingly, we reverse the Circuit Court's judgment and remand the case for further proceedings.

## FACTUAL & PROCEDURAL BACKGROUND

On 8 March 2011 effectively,[2] survival and wrongful death claims were filed in the Health Care Alternative Dispute Resolution Office of Maryland by the surviving husband (Roger P. Varner, Sr.) and three adult children (Susan Mummert, Roger Varner, and Travis Varner) (referred to collectively as "the Beneficiaries"), of the decedent Margaret Varner ("Mrs. Varner"), against Massoud B. Alizadeh, M.D., and his eponymous professional association employer (referred to collectively as "Dr. Alizadeh"). The parties waived arbitration, and the

---

1. Maryland Code (1974, 2013 Repl.Vol.), Courts and Judicial Proceedings Article § 3–901(e).

2. The family members filed originally their claims on 12 May 2010, but obtained leave of court to dismiss them, without prejudice, due to a procedural error.

case was transferred to the Circuit Court for Washington County.

The complaint filed in the Circuit Court contained four wrongful death counts,[3] alleging the following pertinent facts: In 1997, Mrs. Varner, then 58 years old, became a patient of Massoud B. Alizadeh, M.D., a physician in family practice. Between 1997 and early 2004, over the course of visiting routinely Dr. Alizadeh, Mrs. Varner lost a significant amount of weight and experienced eventually alternating diarrhea and constipation. During that period and despite these symptoms, Dr. Alizadeh did not order or perform a screening colonoscopy, annual digital rectal examination, or annual hemoccult testing. After conducting ultimately a digital rectal examination and hemoccult testing on 25 May 2004, Dr. Alizadeh referred immediately Mrs. Varner to a general surgeon, who performed additional tests, including a colonoscopy, which revealed a relatively large tumor in her colon. The general surgeon diagnosed Mrs. Varner with Stage IV colorectal cancer with liver metastasis. Despite ensuing treatment, the cancer spread to Mrs. Varner's spine and led to her death on 14 March 2008. All of the wrongful death counts alleged that Dr. Alizadeh was negligent and careless in failing to conduct timely the appropriate tests and failing to diagnose timely Mrs. Varner's colorectal cancer.

Dr. Alizadeh filed a motion to dismiss, arguing that, although the Beneficiaries filed their wrongful death claims within three years of Mrs. Varner's death, their claims were precluded because Mrs. Varner had not brought timely a personal injury lawsuit against Dr. Alizadeh, nor could she have at the time of her death as it would have been time-barred by the statute of limitations applicable to medical negligence claims. Maryland Code (1974, 2013 Repl.Vol.), Courts and Judicial Proceedings Article § 5–109(a). After hearings, the Circuit Court entered, on 5 December 2011, an order granting Dr. Alizadeh's motion to dismiss. The Benefi-

---

3. The Beneficiaries dismissed voluntarily the survival action count, conceding that it was time-barred.

ciaries (sometimes referred to hereafter as "Appellants") filed timely a notice of appeal to the Court of Special Appeals. We issued a writ of certiorari on 14 December 2012, on our own initiative, while the case was pending in the intermediate appellate court. *Mummert v. Alizadeh,* 429 Md. 528, 56 A.3d 1241 (2012). We consider the following two questions in this appeal:

> Under Maryland law, is a wrongful death beneficiary's right to file a lawsuit contingent upon the decedent's ability to bring a timely negligence claim on the date of her death?

> In addition or in the alternative, does § 5–109 of the Courts and Judicial Proceedings Article apply directly to a wrongful death action arising out of alleged medical negligence and, if so, does it bar Appellants' wrongful death action?

We answer both questions in the negative and shall reverse the Circuit Court's judgment.

## STANDARD OF REVIEW

On appeal from the grant of a motion to dismiss, our task is to determine whether the trial court was legally correct. *Sprenger v. Pub. Serv. Comm'n,* 400 Md. 1, 21, 926 A.2d 238, 250 (2007) (citing *Pendleton v. State,* 398 Md. 447, 921 A.2d 196 (2007)). In doing so, we "must assume the truth of, and view in a light most favorable to the nonmoving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them," and we may "order dismissal only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff." *RRC N.E., LLC v. BAA Md., Inc.,* 413 Md. 638, 643, 994 A.2d 430, 433 (2010). The questions before us in this appeal involve statutory interpretation, which are legal issues that we view without deference to the legal analysis of the trial court. *Harvey v. Marshall,* 389 Md. 243, 257, 884 A.2d 1171, 1179 (2005) (citing *Mohan v. Norris,* 386 Md. 63, 66–67, 871 A.2d 575, 577 (2005); *Davis v. Slater,* 383 Md. 599, 604, 861 A.2d 78, 80–81 (2004)).

## PERTINENT PRINCIPLES OF STATUTORY CONSTRUCTION

■ In a relatively recent opinion, we explained several principles of statutory construction that are pertinent also to this case:

The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny.

To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the language of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with "forced or subtle interpretations" that limit or extend its application.

We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.

Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger

statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose, and the relative rationality and legal effect of various competing constructions.

In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense.

*Lockshin v. Semsker*, 412 Md. 257, 274–76, 987 A.2d 18, 28–29 (2010) (internal citations omitted). We highlight one additional principle for present purposes—that "[s]tatutes in derogation of the common law are strictly construed, and it is not to be presumed that the [L]egislature by creating statutory assaults intended to make any alteration in the common law other than what has been specified and plainly pronounced." *Cosby v. Dep't of Human Res.*, 425 Md. 629, 645, 42 A.3d 596, 606 (2012) (quoting *Breslin v. Powell*, 421 Md. 266, 287, 26 A.3d 878, 891 (2011)) (alterations in original) (internal quotation marks omitted).

## ANALYSIS

### I.  Maryland's Wrongful Death Statute.

Our analysis begins with a brief retrospective on the history of Maryland's wrongful death statute. We discussed previously the origins of our wrongful death statute in *Walker v. Essex:*

"The common law not only denied a tort recovery for injury once the tort victim had died it also refused to recognize any new and independent cause of action in the victim's dependents or heirs for their own loss at his death." In response to this harsh rule, the English legislature created a cause of action for wrongful death by enacting the Fatal Accidents Act of 1846, also known as Lord Campbell's Act. Every

American state subsequently adopted its own wrongful death statute.

In 1852, Maryland adopted a statute strongly resembling Lord Campbell's Act.

318 Md. 516, 522, 569 A.2d 645, 648 (1990) (quoting W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 127, at 945 (5th ed.1984)) (citations omitted). The portion of the 1852 enactment most pertinent to this case contained language taken directly from the Lord Campbell's Act of England:

[W]hensoever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued,) have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured. . . .

1852 Md. Laws ch. 299; *cf. Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 761 (2008) (quoting the language of the original English Lord Campbell's Act). With minor changes not relevant for present purposes, the above-quoted language was codified eventually at Article 67 of the Maryland Code.[4] Md.Code (1879), Article 67 § 1. Aside from some irrelevant additions and other changes, that language remained virtually unchanged until the 1970s. Md.Code (1957, 1970 Repl.Vol.), Article 67 § 1.[5]

---

4. In early versions of the Maryland Code, the wrongful death statute appeared at Article 65, *see* Md.Code (1860), Article 65 § 1, but as early as 1879, the statute was moved, without any apparent alteration, to Article 67, where it would remain for nearly a century.

5. Between the first iteration of the statute at Article 67 § 1 of the Code and the version appearing in the 1970 Replacement Volume, language was added to address such circumstances as wrongful death caused by a vessel, and where the person causing the wrongful death is also deceased. Those additions did not affect or displace, however, the core language of the statute that is at issue in this case. Thus, while the version appearing in the 1970 Replacement Volume appears to the eye significantly longer than older versions, the language at issue in this case was maintained.

The Legislature changed the statute in 1973 when, as part of what has become a longstanding Code revision effort, the statute was moved from Article 67 to Title 3, Subtitle 9, of the Courts and Judicial Proceedings Article. Under the 1973 iteration, "[a]n action may be maintained against a person whose wrongful act causes the death of another," and "wrongful act" was defined as "an act, neglect, or default ... which would have entitled the party injured to maintain an action and recover damages if death had not ensued." Md.Code (1974, 2013 Repl.Vol.), Courts and Judicial Proceedings Article §§ 3–901(e), 3–902(a). That language remains to this day.

The 1973 changes to the statute were made for style and organization purposes, not to alter the meaning of the statute, as is the usual goal of Code revision. *See* 1973 Md. Laws Spec. Sess. 169, Revisor's Note (stating that "[t]he definition of 'wrongful act' is derived from Art. 67, § 1," and is "placed at the beginning of the subtitle for better organization"); *see also* William H. Adkins, II, *Code Revision in Maryland: The Courts and Judicial Proceedings Article*, 34 Md. L.Rev. 7, 30 (1974) (stating that the revision of the wrongful death statute "involves only style and arrangement changes in its incorporation of former article 67").

The statute contains also a time limitation provision on bringing a wrongful death claim, which the Legislature enlarged on three subsequent occasions. The original limitation in the 1852 enactment was twelve months, but it was extended later to eighteen months, then to two years, and eventually to three years to bring it "in uniformity with that of other negligence actions." *Waddell v. Kirkpatrick,* 331 Md. 52, 55–56 & n. 4, 626 A.2d 353, 354–55 & n. 4 (1993). The relevant limitations provision for present purposes now reads, in pertinent part, "an action under this subtitle shall be filed within three years after the death of the injured person." § 3–904(g)(1).

## II. Under Maryland's Wrongful Death Statute, A Wrongful Death Claimant's Right To Sue Is Not Contingent On The Decedent's Ability To File A Timely Claim Before Death.

■ The tension point of the first question before us is the language of the wrongful death statute's definition of a "wrongful act." In the trial court, Dr. Alizadeh moved to dismiss the Beneficiaries' complaint on the grounds that a wrongful death claim requires the existence of a wrongful act, and that there was no actionable wrongful act in this case because, at the time of Mrs. Varner's death, a suit for medical negligence had not been brought by her and could not have been brought because it would be barred by the specific statute of limitations applicable to such claims. *See supra* at 211–12, 77 A.3d at 1051–52. The gist of the argument made by Dr. Alizadeh is that the legislative intent behind the inclusion in the wrongful death statute of the language requiring that a "wrongful act" be one "which would have entitled the party injured to maintain an action and recover damages *if death had not ensued,*" was to condition the existence of a wrongful act on the decedent having a viable cause of action at the time of her death. § 3–901(e) (emphasis added).

In granting Dr. Alizadeh's motion and finding that the wrongful death action was time-barred, the trial court relied on *Benjamin v. Union Carbide Corp.,* 162 Md.App. 173, 873 A.2d 463 (2005), *aff'd sub nom. Georgia–Pacific Corp. v. Benjamin,* 394 Md. 59, 904 A.2d 511 (2006), as well as *Binnix v. Johns–Manville Prods. Corp.,* 593 F.Supp. 1180 (D.Md. 1984), and *Mills v. Int'l Harvester Co.,* 554 F.Supp. 611 (D.Md.1982).

The Beneficiaries urge us to reverse the Circuit Court's ruling and to justify that result by holding that, based on the plain language of the wrongful death statute, the ability to bring a wrongful death claim is not conditioned on the decedent's ability to bring timely a negligence claim at the time of her death. In support of that argument, the Beneficiaries assert the following: (1) Maryland's wrongful death statute

created a new cause of action, not one derivative from the decedent's negligence action; (2) the three-year timeliness provision of § 3-904(g)(1) is the only time limitation applicable to wrongful death actions; and, (3) the definition of "wrongful act" in § 3-901(e) is irrelevant to answering the question of whether a wrongful death suit must be brought within a certain time after the decedent's death.

Dr. Alizadeh ripostes that a wrongful death claim is not a purely separate action from the underlying or inchoate medical negligence claim, and that the Beneficiaries fail to read the language of the wrongful death statute's timeliness provision in the context of the whole statute.

### A. The language of § 3-901(e) is ambiguous.

The language of § 3-901(e), when read in the context of the statutory scheme, is ambiguous. The parties each claim that the plain language of the definition of "wrongful act" supports their interpretation of the statute. On the one hand, the Beneficiaries seek to persuade us that to adopt Dr. Alizadeh's "plain meaning" argument would be to engraft impermissibly the words "on the date of death" into the statute. On the other hand, Dr. Alizadeh attempts to persuade us that to adopt the "plain meaning" interpretation urged by the Beneficiaries would render the definition's reference to death superfluous, and would require us to re-write impermissibly "if death had not ensued" as "at any point in time." Neither approach is clearly correct. Rather, the dueling interpretations serve quintessentially to highlight the ambiguity in the statute's language. *See Reier v. State Dep't of Assessments & Taxation,* 397 Md. 2, 26–27, 915 A.2d 970, 985 (2007) ("It strikes us that the competing parties' arguments present 'two . . . reasonable alternative interpretations of the statute,' making the statute ambiguous." (quoting *Deville v. State,* 383 Md. 217, 223, 858 A.2d 484, 487 (2004))). Because we find the language ambiguous on its face, we look to sources outside of the statute's plain text for indications of the Legislature's intent.

The Legislature has left a legislative record without any explicit indications of the intent behind the language defining a "wrongful act." Although we are able to track the evolution of the language from the original act passed in 1852 to the revised version currently in the Courts and Judicial Proceedings Article, as discussed *supra*, there are no indications that any changes were intended to affect substantively the meaning of the "if death had not ensued" language that has existed for the life of the statute. We found no testimony, reports, or other commentary of the General Assembly regarding the meaning of that language or how that language relates to the decedent's ability to file timely a negligence claim before her death.

B. *The Legislature's purpose in enacting the wrongful death statute was to create a new and independent cause of action.*

■■ In the absence of any explicit explanation of intent from the Legislature, we look, "[i]n resolving ambiguities," to the statute's "general purpose." *Lockshin,* 412 Md. at 276, 987 A.2d at 29. In the original enactment, our wrongful death statute was titled "An act to compensate the families of persons killed by the wrongful act, neglect or default of another person." 1852 Md. Laws ch. 299. That the purpose of the act was to compensate the families of the decedents, as opposed to the estates of the decedents, is somewhat telling. As the Beneficiaries point out, we have long held that the Legislature intended the wrongful death statute to be a new cause of action, separate and independent largely from the decedent's own negligence or other action or a survival action, meant to preserve an action the decedent had the ability to bring before her death. We explained this distinction:

> [The wrongful death statute] has not undertaken to keep alive an action which would otherwise die with the person, but, on the contrary, has created a new cause of action for something for which the deceased person never had, and never could have had, the right to sue; that is to say, the injury resulting from his death.

*Stewart v. United Elec. Light & Power Co.*, 104 Md. 332, 341, 65 A. 49, 53 (1906) (quoting *Tucker v. State ex rel. Johnson*, 89 Md. 471, 479, 43 A. 778, 780–81 (1899)). Thus, the wrongful death statute was enacted to allow "a spouse, parent, or child, or a secondary beneficiary who was wholly dependent on the decedent, to recover damages for his or her own loss accruing from the decedent's death." *Eagan v. Calhoun*, 347 Md. 72, 82, 698 A.2d 1097, 1102 (1997).

Dr. Alizadeh argues that a wrongful death action is more derivative of the decedent's own action. Because the two actions are so connected, Dr. Alizadeh continues, we should be compelled to conclude that, if the statute of limitations would operate to bar the decedent's claim before she died, a wrongful death claim filed subsequent to her death lacks the predicate "wrongful act" required by § 3–902(a) (and defined in § 3–901(e)). Dr. Alizadeh points to the following passage from our decision in *Eagan* as support for the close connection between the two actions: "It follows from the fact that the action is a personal one to the [wrongful death] claimant that the claimant is ordinarily subject to any defense that is applicable to him or her, whether or not it would have been applicable to the decedent." 347 Md. at 82, 698 A.2d at 1102.

Contrary to Dr. Alizadeh's re-purposing of that passage, what we said in *Eagan* serves actually to highlight the distinction between the decedent's claim and a subsequent wrongful death claim. The point we were making in *Eagan* is that certain defenses may bar a wrongful death claim even if the same defenses would not have barred a claim filed by the decedent before her death. The Beneficiaries in this case argue essentially that the reverse is true: a defense that would bar a claim brought by the decedent before her death does not bar necessarily a wrongful death claim brought by her surviving relatives within three years of the decedent's death.

Dr. Alizadeh emphasizes our prior treatment of defenses (other than the statute of limitations) to support the argument

that the connection between a wrongful death claim and the decedent's underlying negligence claim compels a conclusion that the decedent must have retained a viable claim at the time of death. In this regard, Dr. Alizadeh points out that we have held previously that, where certain defenses would bar a decedent's claim, a wrongful death claim brought by the decedent's surviving relatives is also barred. *See, e.g., Frazee v. Balt. Gas & Elec. Co.,* 255 Md. 627, 258 A.2d 425 (1969) (contributory negligence); *Balt. & Potomac R.R. v. State ex rel. Abbott,* 75 Md. 152, 23 A. 310 (1892) (assumption of risk); *Smith v. Gross,* 319 Md. 138, 571 A.2d 1219 (1990) (parental immunity); *State ex rel. Bond v. Consol. Gas, Elec. Light & Power Co.,* 146 Md. 390, 126 A. 105 (1924) (no privity of contract between decedent and manufacturer).[6] Those defenses are distinguishable from a statute of limitations defense, however, because, where those defenses apply, the decedent did not have a viable claim from the outset. Thus, the wrongful death statute's requirement of an act "which would have entitled the party injured to maintain an action and recover damages if death had not ensued" barred the wrongful death claims in those instances. *Smith,* 319 Md. at 144, 571 A.2d at 1221.

Dr. Alizadeh relies heavily and especially on our treatment of the defense of release to carry the day here. The release of a negligence claim by the decedent can bar surviving family members from bringing later a wrongful death action. *State ex rel. Melitch v. United Rys. & Elec. Co.,* 121 Md. 457, 88 A. 229 (1913). Relying on *Melitch,* Dr. Alizadeh argues that a release is akin to the statute of limitations because both defenses stem from conduct of the decedent occurring after commission of the underlying negligence. A release is distinguishable, however, because a decedent who executes a release has acted affirmatively and purposefully to extinguish

---

**6.** *Bond* was decided before the "fall of the citadel" when lack of privity was still a tenable defense in products liability cases. *Smith v. Gross,* 319 Md. 138, 144, 571 A.2d 1219, 1221–22 (1990).

the underlying claim. This is different from a statute of limitations defense where there may be no evidence necessarily that the decedent intended to allow the statute of limitations to run out on her claim.[7] Moreover, in our view, whether a release by the decedent bars a wrongful death claim by her beneficiaries depends in part on the sweep of the language of the particular release.

There is an additional reason why our holding in *Melitch* does not compel a conclusion that the Legislature intended for a wrongful death claim to hinge on whether the decedent had a viable claim at the time of death. When we held that a release by the decedent barred the wrongful death claim brought in *Melitch,* we relied heavily on the reasoning of a number of courts in other jurisdictions that, as Professor Prosser pointed out, held that a release should bar a wrongful death action for fear of possible double recovery. Keeton et al., *supra,* § 127, at 955. Fear of double recovery is not a concern with regard to the statute of limitations defense. Keeton et al., *supra,* § 127, at 957.

It is not wholly incorrect to state that a wrongful death claim is derivative of the decedent's claim in some sense. The two actions stem from the same underlying conduct, which must have resulted in the decedent having a viable claim when she was injured. That connection, however, does not compel the conclusion that all defenses applicable to the decedent's claim prior to her death would preclude necessarily maintenance of a wrongful death claim after the decedent's death. That the Legislature's purpose was to create a new and independent cause of action when it passed the wrongful death statute suggests that it did not intend for a statute of limitations defense against the decedent's claim to bar consequently a subsequent wrongful death claim.

---

7. Reading the well-pleaded allegations of the complaint in a light most favorable to the Beneficiaries, there does not appear to be any suggestion that Mrs. Varner allowed purposefully the statute of limitations to run on her alleged medical negligence claim.

*C. The weight of authority suggests that where a legislature creates a new and independent wrongful death action that action is not contingent on the decedent's ability to file a timely claim before death.*

▮ In addition to the general purpose of the statute, we look also to "other relevant sources intrinsic and extrinsic to the legislative process" to help resolve an ambiguity in the language of the relevant statute. *Lockshin,* 412 Md. at 276, 987 A.2d at 29. Both parties argue that the weight of authority from other jurisdictions supports their respective interpretations of the statutory language here.

Our review of the cases offered by the parties (and other cases we found) reveals that courts in many jurisdictions have considered the question of whether a decedent's failure to bring a timely negligence claim precludes a subsequent wrongful death claim. Of course, the more useful cases, for our purposes, are those in which courts interpreted wrongful death statutes with the same or similar language to that in Maryland's wrongful death statute.[8] Those foreign cases where the language of the wrongful death statute in a particular jurisdiction is neither discussed nor referenced, or where a particular jurisdiction employs a wrongful death statute with

---

8. A number of courts have considered language that is identical to that in the English Lord Campbell's Act, and thus, as discussed *supra,* is identical to our original wrongful death statute. *See, e.g., Rowell v. Clifford,* 976 P.2d 363, 364 (Colo.Ct.App.1998). Others involve language that is the same as in our current statute. *See, e.g., Drake v. St. Francis Hosp.,* 560 A.2d 1059, 1062 (Del.1989). Some courts have considered statutes with different language, but which was also changed only stylistically from the language of the original Lord Campbell's Act. *See, e.g., Castorena v. Gen. Elec.,* 149 Idaho 609, 238 P.3d 209, 215 (2010) (stating that the phrase " 'the act, neglect, or default must have been such as would have entitled the party injured to maintain an action therefore if death had not ensued' " from the original Lord Campbell's Act does not appear in Idaho's wrongful death statute, but "it has been implicitly read into the act." (citing *Sprouse v. Magee,* 46 Idaho 622, 269 P. 993, 994 (1928))); *Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 346 (Tex.1992) (stating that the current language in the Texas wrongful death statute, which reads " 'only if the individual injured would have been entitled to bring an action for the injury if he had lived,' " is "merely a recodification of language" that was taken originally from the Lord Campbell's Act).

significantly different language than our statute, are not particularly helpful to our analysis in this case.[9]

In reviewing the cases from other jurisdictions interpreting language similar to that in Maryland's wrongful death statute, we found no clear majority view. A number of jurisdictions concluded that a decedent's failure to bring a timely negligence claim before death would not bar a subsequent wrongful death claim. *Matthews v. Celotex Corp.*, 569 F.Supp. 1539 (D.N.D.1983) (applying North Dakota law); *Frongillo v. Grimmett*, 163 Ariz. 369, 788 P.2d 102 (Ct.App.1989); *Rowell v. Clifford*, 976 P.2d 363 (Colo.Ct.App.1998); *Castorena v. Gen. Elec.*, 149 Idaho 609, 238 P.3d 209 (2010); *German Am. Trust Co. v. Lafayette Box, Bd. & Paper Co.*, 52 Ind.App. 211, 98 N.E. 874 (1912); [10] *Gramlich v. Travelers Ins. Co.*, 640 S.W.2d 180 (Mo.Ct.App.1982); *Miller v. Estate of Sperling*, 166 N.J. 370, 766 A.2d 738 (2001); *Brosse v. Cumming*, 20 Ohio App.3d 260, 485 N.E.2d 803 (1984); *Hoover's Adm'x v. Chesapeake & O. Ry. Co.*, 46 W.Va. 268, 33 S.E. 224 (1899).

Courts in several other jurisdictions reached the opposite conclusion. *Nelson v. Am. Nat. Red Cross*, 26 F.3d 193 (D.C.Cir.1994); *Miller v. United States*, 932 F.2d 301 (4th

---

9. For examples of cases not discussing the language of the wrongful death statute in a particular jurisdiction, see *Northington v. Carey–Canada, Inc.*, 432 So.2d 1231 (Ala.1983), and *Baumgart v. Keene Bldg. Products Corp.*, 430 Pa.Super. 162, 633 A.2d 1189 (1993), *aff'd*, 542 Pa. 194, 666 A.2d 238 (1995), *overruled on other grounds by Fine v. Checcio*, 582 Pa. 253, 870 A.2d 850 (2005). North Carolina is an example of a jurisdiction with language that was altered significantly from the language of the English Lord Campbell's Act. *See Dunn v. Pac. Emp'rs Ins. Co.*, 332 N.C. 129, 418 S.E.2d 645, 646 (1992) (interpreting N.C. Gen.Stat. § 1–53(4) (1983), which reads, in pertinent part "whenever the decedent would have been barred, had he lived, from bringing an action for bodily harm because of the provisions of [North Carolina statutes of limitations applicable to certain other civil actions], no action for his death may be brought").

10. The court in *German American Trust Co. v. Lafayette Box, Board and Paper Co.*, 52 Ind.App. 211, 98 N.E. 874 (1912), did not discuss the "if death had not ensued" language from Indiana's wrongful death statute directly, but relied on a decision in which it had done so the year before. *German Am. Trust Co.*, 98 N.E. at 874 (citing *Wilson v. Jackson Hill Coal & Coke Co.*, 48 Ind.App. 150, 95 N.E. 589 (1911)).

Cir.1991) (applying Virginia law); *Drake v. St. Francis Hosp.,* 560 A.2d 1059 (Del.1989); *Lambert v. Vill. of Summit,* 104 Ill.App.3d 1034, 60 Ill.Dec. 778, 433 N.E.2d 1016 (1982); *Mason v. Gerin Corp.,* 231 Kan. 718, 647 P.2d 1340 (1982); *Kelliher v. N.Y. Cent. & H.R.R. Co.,* 212 N.Y. 207, 105 N.E. 824 (1914); *Riley v. Brown & Root, Inc.,* 836 P.2d 1298 (Okla.1992); *Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343 (Tex.1992); *Miller v. Luther,* 170 Wis.2d 429, 489 N.W.2d 651 (Ct.App.1992); *Edwards v. Fogarty,* 962 P.2d 879 (Wyo.1998).

Two differences underlying the split of authority are noteworthy and compelling. First, courts in those jurisdictions holding that a wrongful death action is not contingent on the decedent's filing or ability to file a timely negligence claim before death tend to interpret their wrongful death statute, as we do in Maryland, as creating a new and independent cause of action. *See, e.g., Frongillo,* 788 P.2d at 103 ("[I]n Arizona, the survivors' legal right is not a derivation from nor a continuation of claims which formerly existed in the injured party, but instead an independent claim which provides recovery for damages sustained by the survivors upon the death of the party injured." (quoting *James v. Phx. Gen. Hosp.,* 154 Ariz. 594, 744 P.2d 695, 704 (1987))); *Gramlich,* 640 S.W.2d at 186 ("The action for wrongful death is an action separate and distinct from the action for injuries to the decedent."). This is also reflected in the Restatement (Second) of Torts:

> Under most wrongful death statutes, the cause of action is a new and independent one, accruing to the representative or to surviving relatives of the decedent only upon his death; and since the cause of action does not come into existence until the death, it is not barred by prior lapse of time, even though the decedent's own cause of action for the injuries resulting in death would be barred.

§ 899 cmt. c (1979).[11]

Conversely, a number of those jurisdictions holding that a wrongful death claim is contingent on the decedent's bringing

---

11. We cited recently and approvingly this section in *Prince George's County v. Longtin,* 419 Md. 450, 476, 19 A.3d 859, 875 (2011).

or ability to bring a timely negligence claim prior to death have a less distinct and comparable wrongful death statute to Maryland's statute. *See, e.g., Russell,* 841 S.W.2d at 347 (" 'The statutory beneficiaries of a deceased ... have the same substantive rights to recover as the deceased would have had ....' " (quoting *Vassallo v. Nederl—Amerik Stoomv Maats Holland,* 162 Tex. 52, 344 S.W.2d 421, 424 (1961))); *Miller v. United States,* 932 F.2d at 303 ("Virginia's wrongful death statute does not create a new cause of action, but only a right of action in a personal representative to enforce the decedent's claim for any personal injury that caused death.").

Because we have long held that Maryland's wrongful death statute created a new and independent cause of action, we are inclined to find more persuasive the reasoning of those other courts' cases holding that a wrongful death claim is not contingent on the decedent's ability to bring a timely claim before death.

### D. *Conditioning a wrongful death claimant's right to sue on the decedent's ability to file a timely claim before death would lead to an illogical, and absurd result.*

The second major difference underlying the split of authorities is their respective interpretations of the practical outcome of holding that the wrongful death claim is barred. This is an important consideration in our effort to interpret the language of our wrongful death statute because we must weigh "the relative rationality and legal effect of various competing constructions." *Lockshin,* 412 Md. at 276, 987 A.2d at 29. Some courts in those jurisdictions holding that a wrongful death claim is not contingent on the decedent's ability to bring a timely claim before death reasoned that it would be illogical to allow expiration of a statute of limitations on the underlying claim to bar a wrongful death claim before the latter claim accrues. *See, e.g., Miller v. Estate of Sperling,* 766 A.2d at 744–45 (stating that "an unacceptable paradox," would exist where "a wrongful death claim could effectively be time barred before the death itself"); *Hoover's Adm'x,* 33 S.E. at 225 (stating that because the action does not accrue until

death, " 'to say ... that where the person injured dies one year and two days after being injured no action can be maintained by the personal representative is to go in the face of the statute' " (quoting *Louisville, Evansville & St. Louis R.R. Co. v. Clarke,* 152 U.S. 230, 238, 14 S.Ct. 579, 580–81, 38 L.Ed. 422 (1894))).

This reasoning is persuasive. We agree that it would be illogical for, by operation of a statute of limitations that applies to the decedent's separate claim, a wrongful death claim to be time-barred before it can accrue. We do not interpret the language of Maryland's wrongful death statute as intending such a result because "the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." *Lockshin,* 412 Md. at 276, 987 A.2d at 29.

It is undeniable that the courts in those jurisdictions holding that a wrongful death claim is contingent on the decedent's ability to bring a timely claim before death adopted a different view. Some of those courts reasoned that it would be illogical to allow a wrongful death claim to proceed where there has been too lengthy a passage of time following the decedent's underlying injury. *See, e.g., Miller v. Luther,* 489 N.W.2d at 655 ("Such a holding would .... open the door to actions accruing upon death, even if death occurred twenty years after the causally negligent act"); *Russell,* 841 S.W.2d at 349 (stating that to allow beneficiaries to sue "if the action which allegedly caused the death occurred five, ten, twenty or more years earlier .... would thwart the very purpose of limitations"). Not surprisingly, Dr. Alizadeh embraces this reasoning, adding that to allow wrongful death claims based on medical malpractice to be filed years after the alleged injury to the decedent would be problematic for the practical defense of such claims by health care providers who are not required to keep their records for indefinite periods of time.

We do not find these arguments persuasive for two reasons. First, allowing wrongful death claims to proceed under such circumstances would not thwart the statute of limitations for

medical negligence claims because that statute applied to the decedent's claim, not the wrongful death claimant's independent cause of action and its separate limitations provision. The only time limitation in our wrongful death statute is the requirement that the claimant bring the action within three years of the decedent's passing. § 3–904(g)(1).[12] Second, a potential lack of medical record retention, due to the passage of time, prejudices both parties, including the wrongful death plaintiffs, who bear the burden of proving their claim.

In light of the Legislature's purpose of creating a new and independent cause of action when it passed the Maryland wrongful death statute and the reasoning of many of those courts interpreting similar statutes, we think that, by requiring that a wrongful act be one "which would have entitled the party injured to maintain an action and recover damages if death had not ensued," the Legislature did not intend for a wrongful death action to be barred by expiration of the statute of limitations applicable to the decedent's underlying claim. Accordingly, we hold that a wrongful death claimant's right to sue is not contingent on the decedent's ability to file a timely negligence claim prior to her death.

We recognize that our holding here may conflict or be inconsistent with a few statements made in earlier opinions by this Court (all of which, however, were *dicta* ), as well as the case law relied on by the trial court in this case. In *Philip Morris v. Christensen*, 394 Md. 227, 905 A.2d 340 (2006), we stated, in *dicta*, that the determination of whether a "wrongful act" existed "is made at the time of the decedent's death." 394 Md. at 268, 905 A.2d at 364. That statement depended on a footnote in *Smith v. Gross*, 319 Md. 138, 571 A.2d 1219 (1990), where, also in *dicta*, we stated (with understandable equivocation) that "Maryland law *appears* to be that if a decedent could not have brought a cause of action at the time of death, the wrongful death action similarly is precluded." 319 Md. at 143 n. 4, 571 A.2d at 1221 n. 4 (emphasis added).

---

12. Dr. Alizadeh does not dispute that the Beneficiaries satisfied the requirements of § 3–904(g)(1).

Because the question in the present case was not central to either of those cases, we did not have then the benefit of extensive briefing and argument by the parties, nor apparently the opportunity or inclination to review the history and purpose of our wrongful death statute before those statements were published.

Moreover, upon considered reflection of the case law, we conclude that the statement included in footnote 4 of *Smith,* and later appropriated in *Philip Morris,* was unfounded at the time of its adoption. The language of footnote 4 in *Smith* was gleaned from *Burke v. United States,* 605 F.Supp. 981, 988 (D.Md.1985). The cases cited in *Burke* do not support that court's assertion that Maryland law at the time "appears" to preclude a wrongful death claim if the decedent could not have brought a cause of action at the time of death. The first case relied on by the *Burke* court is our decision in *Melitch,* which, as discussed *supra,* does not justify such an observation. The second and third cases cited are inapposite. In *State ex rel. Cox v. Maryland Electric Railways Co.,* 126 Md. 300, 95 A. 43 (1915), the Court held that a wrongful death claim should be dismissed because the wrongful death claimants settled previously with the defendant in a separate case. In *State ex rel. Bond v. Consolidated Gas, Electric, Light & Power Co.,* 146 Md. 390, 126 A. 105 (1924), we held that a wrongful death claim should be dismissed because the decedent lacked privity of contract with the defendant manufacturer and, thus, never had a claim in the first instance. Neither of those cases considered whether the decedent had a viable cause of action before death. The fourth case mentioned in *Burke* is *Mills v. International Harvester Co.,* 554 F.Supp. 611 (D.Md.1982), which was relied on also by the Circuit Court in the present case. *Mills* is distinguishable. In *Mills,* the decedent was injured fatally by a tractor more than eleven years after it was sold to him, and more than seven years after the four-year statute of limitations applicable to the underlying breach of warranty claim ran. 554 F.Supp. at 612. Moreover, we do not find the reasoning of *Mills* persuasive.

To the extent that our statements in *Philip Morris v. Christensen* and *Smith v. Gross* appear inconsistent or in conflict with our holding in the present case, they are disavowed. Additionally, we are not persuaded by the other two cases on which the Circuit Court relied when it granted Dr. Alizadeh's motion to dismiss. *Binnix*, like *Mills*, is distinguishable. The decedent in *Binnix* died before the statute of limitations on his claim expired, but the defendant argued that the family's wrongful death action should be barred because it was filed more than three years after the statute of limitations on the decedent's claim accrued. 593 F.Supp. at 1183. That is different materially than the facts of this case. Moreover, we are not persuaded that we should decide this case in favor of Dr. Alizadeh based on the *Binnix* court's statement that "a limitations bar on the injured person's cause of action will extinguish" a subsequent wrongful death action "[i]n some cases," but "[i]n some cases, it will not." *Id.* That statement was not necessary to the *Binnix* court's holding (i.e., *dicta* ) and the only case discussed there in support of that assertion is *Mills*, which we have explained earlier why it is unpersuasive. *Id.*

Nor are we persuaded by the Court of Special Appeals's decision in *Benjamin v. Union Carbide*. In that case, the intermediate appellate court stated that the definition of "wrongful act" in § 3–901(e) means that "the decedent must have been able to maintain a compensable action *as of the time of death*." [13] 162 Md.App. at 188–89, 873 A.2d at 472. In support of that assertion, the Court of Special Appeals relied on its reasoning that the "wrongful act" definition is "consistent" with the survival statute, this Court's treatment of defenses to a decedent's claim other than expiration of the statute of limitations, and the U.S. District Court for the District of Maryland's decisions in *Mills* and *Binnix*. *Benjamin v. Union Carbide*, 162 Md.App. at 189–90, 873 A.2d at

---

**13.** The meaning of the definition of "wrongful act" in § 3–901(e) was not one of the issues considered by this Court in our subsequent certiorari review of the *Benjamin* case. *Georgia–Pacific Corp. v. Benjamin*, 394 Md. 59, 904 A.2d 511 (2006).

472–73. The reasoning of the Court of Special Appeals is contrary to our reasoning discussed *supra*, and therefore that portion of the *Benjamin v. Union Carbide* opinion interpreting the meaning of "wrongful act" is disavowed.

### III. Section 5–109 Of The Courts And Judicial Proceedings Article Does Not Apply To Wrongful Death Actions Based On Medical Negligence.

The second question of statutory interpretation with which we engage today is one that can be decided based on the plain meaning of the language of the pertinent statute. Dr. Alizadeh asks us to hold that § 5–109 of the Courts and Judicial Proceedings Article of the Maryland Code, which contains the statute of limitations applicable to medical negligence claims, should apply to wrongful death claims based on alleged medical negligence and should operate to bar the Beneficiaries' action in this case. Dr. Alizadeh argues, because § 5–109 is tied to the Health Care Malpractice Claims Act, Md.Code (1974, 2013 Repl.Vol.), Courts and Judicial Proceedings Article § 3–2A–01, *et seq.*, which applies to wrongful death actions based on medical negligence as the "wrongful act," and in light of the legislative history and language of § 5–109, that section should apply directly to a wrongful death action based on medical negligence.

We are not persuaded. The plain language of § 5–109 reads:

(a) An action for damages for *an injury* arising out of the rendering of or failure to render professional services by a health care provider, as defined in § 3–2A–01 of this article, shall be filed within the earlier of:

(1) Five years of the time the injury was committed; or

(2) Three years of the date the injury was discovered.

In construing language referring to damages regarding an action for "personal injury" in a since-amended version of § 11–108(b) of the same Article, we concluded that "[t]he term 'personal injury' or 'injury' normally connotes a physical injury to a victim," and that a statute referring to damages for

"injury" normally "do[es] not include damages recoverable in a wrongful death action." *United States v. Streidel,* 329 Md. 533, 539–40, 620 A.2d 905, 909 (1993), *superseded by statute,* 1994 Md. Laws Ch. 477. Moreover, we pointed out that the General Assembly used language previously such as " 'personal injury, death' or 'personal injury, or death,' or 'personal injury, including death' " when it wanted to "encompass both damages for personal injury and damages for wrongful death." *Streidel,* 329 Md. at 540, 620 A.2d at 909. Although the General Assembly later amended § 11–108 to make it applicable explicitly to wrongful death actions, our reasoning in *Streidel* remains valid. The Legislature has not added any similar language referring to "death" or "wrongful death" in § 5–109. Because the plain language of § 5–109 mentions only "injury," and makes no reference to "death" or "wrongful death," we hold that the Legislature did not intend for that section to apply to a wrongful death action.

## CONCLUSION

When the Beneficiaries filed this wrongful death action, they did so within the only time limitation imposed on such a claim by Maryland's wrongful death statute, the three-year limitation found in § 3–904(g)(1). Mrs. Varner's failure or inability to file a timely claim for medical negligence prior to her death does not bar the action filed timely by her Beneficiaries, nor does § 5–109 apply to bar the Beneficiaries' claim. Therefore, we reverse the Circuit Court's judgment and remand this case to that court for further proceedings.

**JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY REVERSED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.**